# EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
RONARD LORA, et al.,

             Plaintiffs,

             -against-

J. V. CAR WASH, LTC., BROADWAY
HAND CARWASH CORP., WEBSTER HAND
CAR WASH CORP., HARLEM HAND CAR
WASH CORP., BAYWAY HAND CAR
WASH CORP., JOSE VAZQUEZ,
SATURNINO VARGAS, JOSE JIMENEZ,
RAMON PEREZ, and ADOLFO FEDERUS,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11 Civ. 9010 (LLS) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Louis L. Stanton, United States District Judge:**

        On December 23, 2014, the parties in this FLSA action reached a $1,650,000 settlement as to plaintiffs' damages, but were unable to settle the issue of plaintiffs' statutory attorneys' fees. (See Dkt. No. 129: Settlement Conf. Tr.) Presently before the Court is plaintiffs' motion (as amended) for attorneys' fees of $1,349,386.73 and costs of $112,050.36. (Dkt. No. 142: Notice of Motion; Dkt. No. 159: Longobardi Reply Aff. ¶¶ 41, 57.)[1/] Defendants contend that

---

[1/]    Plaintiffs originally sought $1,404,456.23 in fees and $113,594.85 in costs. (Dkt. No. 151: Longobardi Aff. ¶ 247; Dkt. No. 153: Lora Fee Br. at 2.) That amount includes a voluntary eight percent reduction from their alleged $1,535,962.43 in actual fees. (Lora Fee Br. at 2; Longobardi Aff. ¶ 238.) Plaintiffs have conceded that 16.2 more of Longobardi's hours should have been billed at a paralegal rate (Longobardi Reply Aff. ¶ 13 ($6,075 fee reduction)), that 12.1 hours they previously billed at a paralegal rate should have been non-billable clerical time (Longobardi Reply Aff. ¶ 13 n.3 ($1,512.50 fee reduction)), and that the hours billed computing plaintiffs' damages should be reduced by ninety-five hours (Longobardi Reply Aff. ¶ 31 ($47,500 reduction)). In total, plaintiffs have reduced their fees request by a total of $55,087.50. (Longobardi Reply Aff. ¶ 41.) Similarly, in response to defendants' objections, plaintiffs have reduced the costs for which they seek reimbursement (continued...)

2

plaintiffs should be awarded no more than $500,000 in fees and either no costs or no more than

$56,797 in costs. (Dkt. No. 156: J.V. Car Wash Fee Br. at 1.)

For the reasons set forth below, the Court recommends that plaintiffs' motion be

GRANTED in part and plaintiffs' counsel awarded $1,214,448.06 in fees and $112,050.36 in costs.

## PROCEDURAL HISTORY

On December 9, 2011, plaintiffs filed their initial FLSA complaint as a collective

action on behalf of Ronard Lora and Hugo Rivera, and others similarly situated. (Dkt. No. 1:

Compl.) In July 2012, they amended their complaint to add additional named plaintiffs. (Dkt. No.

49: Am. Compl.) The amended complaint also added retaliation claims alleging that defendants

reduced some plaintiffs' hours, reduced the number of days of work per week for some, and

terminated some plaintiffs. (See Am. Compl. ¶¶ 372-79.)

As the Court is aware, and as detailed in a lengthy affidavit submitted by plaintiffs'

counsel Laura Longobardi (Dkt. No. 151),[2/] numerous delays in the progress of the lawsuit ensued,

---

[1/]     (...continued)
         by $1,544.49. (Longobardi Reply Aff. ¶ 57.)

[2/]     Defendants currently are represented by special litigation counsel retained in July 2014 by
         the Chapter 11 Bankruptcy Trustees. (Dkt. No. 157: Mellk Aff. ¶ 9.) As plaintiffs note, two
         prior sets of counsel represented defendants throughout the litigation, and defendants' current
         counsel had virtually no involvement in the case's procedural history (except Rule 68 offers
         of judgment and settlement). (Longobardi Aff. ¶ 5.) Defendants' current counsel does not
         dispute plaintiffs' factual assertions about defendants' conduct during the course of this
         litigation (see generally Dkt. No. 156: J.V. Car Wash Fee Br.; Mellk Aff.), instead arguing
         only that "[a]side from Defendants filing for bankruptcy . . . this litigation has been a fairly
         straightforward wage-and-hour matter" and that "[t]hroughout discovery, it was Defendants'
         (who were represented by counsel other than the undersigned) position that Plaintiffs would
         not be able to prevail . . . because Plaintiffs were not Defendants' employees as defined by
         the applicable statutes" (J.V. Car Wash Fee Br. at 2-3, record citation omitted; see also Mellk
         Aff. ¶¶ 3, 5). Because the Longobardi Affidavit's summary of events in the course of this
         lawsuit is not disputed and is well-supported by docket entries in this litigation, this Report
         (continued...)

including <u>inter alia</u>, multiple changes in defense counsel; allegations that plaintiffs were "criminal 'delinquents'" who had compelled defendant Jose Vazquez, the owner of the defendant car washes, to allow them to conduct their own business on his premises using his equipment and material; repeated failures by the defendants to respond promptly or completely to discovery demands; and allegations by defendants that plaintiffs engaged in criminal witness tampering. (<u>See</u> Dkt. No. 151: Longobardi Aff. ¶¶ 7-9, 31-70.)  Defendants' firing of and replacement of defense counsel on the eve of depositions added to the delays and costs.  (Longobardi Aff. ¶¶ 74-88.)  So too did defendants' meritless motion to dismiss (Dkt. No. 74), which Judge Stanton denied on September 27, 2013.  (<u>See</u> Dkt. No. 89: 9/27/13 Order Denying Motion to Dismiss.)  As plaintiffs' counsel correctly notes, "the normal difficulties and expenses involved in prosecuting a multi-plaintiff case were multiplied considerably by the tactics of Defendant Jose Vazquez . . . [whose] tactics – all of which were designed to delay, distract and derail this litigation – imposed a significant burden on this firm and on the Plaintiffs."  (Dkt. No. 143: Arenson Aff. ¶ 12; <u>see also</u> Dkt. No. 159: Longobardi Reply Aff. ¶ 2: "Given that this case involved eighteen Plaintiffs, all with individual work histories (including seven Plaintiffs with retaliation claims), at four separate car washes, and seven named defendants, this case was complex. Defendants' conduct, however, took this case to another level that generated significantly more work . . . . Defendants engaged in every conceivable contorted tactic to avoid addressing the merits of Plaintiffs' claims . . . . Plaintiffs were forced to respond to Defendants' bad faith and delaying tactics. As a result, Defendants cannot be heard to

---

<sup>2/</sup>     (...continued)
and Recommendation refers to it to summarize the relevant procedural and factual background.

4

complain about the time [plaintiffs' counsel] spent on that response.")[3/]

On October 16, 2013, defendants (Vazquez and the car wash entities) filed bankruptcy petitions in the District of New Jersey, which stayed this lawsuit. (Longobardi Aff. ¶¶ 110-11; Mellk Aff. ¶ 6.) The bankruptcy filings occurred half an hour before plaintiffs were scheduled to depose defendant Vazquez. (Longobardi Aff. ¶ 111.) On November 4, 2013, plaintiffs' counsel moved to lift the bankruptcy stay. (Longobardi Aff. ¶ 120; Mellk Aff. ¶ 7.) On November 26, 2013, the bankruptcy court granted plaintiffs' motion and lifted the stay. (Longobardi Aff. ¶ 122; Mellk Aff. ¶ 7.)

Plaintiffs' counsel describe a series of extraordinary discovery issues that followed the lifting of the bankruptcy stay. (See Longobardi Aff. ¶¶ 124-80.) These included, inter alia, Vazquez's refusal to testify at a deposition in January 2014 (Longobardi Aff. ¶¶ 138-41), his failure to appear at a deposition in March 2014 (Longobardi Aff. ¶¶ 143-44), further failures to appear at deposition by defendants' on-site managers in March and April 2014 (Longobardi Aff. ¶¶ 162-68), and unsuccessful attempts to depose Vazquez's assistant Milagros De Jesus (Longobardi Aff. ¶¶ 170-74). These also included efforts to depose as non-party witnesses the New Jersey-based manufacturer of detergent products used by defendants, in response to defendants' claim that the FLSA did not apply because they used only local products. (Longobardi Aff. ¶¶ 177-80.)

On March 20, 2014, defense counsel informed the Court that defendant Vazquez was suffering from a mental condition that made Vazquez "difficult to stabilize," and sought a six month

---

[3/] Plaintiffs correctly state that: "Largely due to the tactics of Mr. Vazquez, [Judge Stanton] held eleven separate conferences in this matter, and one telephonic conference. Combined with the conferences held by the Bankruptcy Court and the settlement conference with Magistrate [Judge] Peck, there have been twenty-three court conferences in this matter." (Arenson Aff. ¶ 49.)

adjournment of this case.  (Dkt. No. 95: 3/20/14 Memo Endorsed Letter; Longobardi Aff. ¶ 148.)

At a conference on April 3, 2014, plaintiffs requested an independent medical examination ("IME")

of Vazquez, which the Court ordered on defendants' consent. (Longobardi Aff. ¶ 150; see Dkt. No.

102: 4/3/14 Hearing Tr.)  Plaintiffs retained psychiatrist Stuart B. Kleinman.  (Longobardi Aff. ¶

151.)  Dr. Kleinman examined Vazquez for six and half hours over three days -- May 28, May 29,

and June 5, 2014. (Longobardi Aff. ¶ 156.)  Dr. Kleinman also reviewed approximately 1,200 pages

of Vazquez's medical records, as well as a "detailed, 23-page memorandum concerning the standard

for the legal determination of mental competency in civil actions in the Second Circuit" prepared

by Longobardi, "background information concerning the FLSA Action and the bankruptcy

proceedings, and all statements and testimony by Mr. Vazquez." (Longobardi Aff. ¶¶ 152-53, 157.)

On June 26, 2014, Dr. Kleinman issued a written report finding Vazquez "competent to proceed in

this FLSA action." (Longobardi Aff. ¶¶ 158-59.)

Following the lifting of the bankruptcy stay, plaintiffs' counsel remained extensively

involved in defendants' bankruptcy proceedings by:

> (a) participating in the formation of a committee of unsecured creditors of the
> Defendants and participating in the meeting of the creditors of the Car Wash
> Defendants pursuant to Section 341(a) of the Bankruptcy Code on December 11,
> 2013; (b) filing a motion to extend the deadlines to file a proof of claim or to file a
> complaint to determine dischargeability of certain debts; (c) participating in the
> meeting of creditors of Mr. Vazquez pursuant to Section 341(a) of the Bankruptcy
> Code on February 12, 2014; and (d) participating in the filing of a motion to appoint
> Chapter 11 Trustees for the Defendants.

(Longobardi Aff. ¶ 182; see also id. ¶¶ 183-210.)  According to plaintiffs, they "were the

Defendants' only creditors (other than state and federal taxing authorities), [they] had a real interest

in continuing to participate in the bankruptcy proceedings, so that [they] would be aware of any

conduct, testimony or documents that could potentially impact either the prosecution of the FLSA

6

Action, or the future recovery of any judgments against the Defendants in the Bankruptcy Court."
(Longobardi Aff. ¶ 181.) Defendants, however, argue that plaintiffs' involvement in the bankruptcy
proceedings after the lifting of the automatic stay was unnecessary. (J.V. Car Wash Fee Br. at 17-
19.)

        In July 2014, Wendy Mellk was retained by defendants' Bankruptcy Trustees as
special litigation counsel. (Mellk Aff. ¶ 9.) Shortly thereafter, settlement discussions began. (Dkt.
No. 149: Arenson Aff. ¶¶ 24-31; Mellk Aff. ¶¶ 10-13.) On or about November 14, 2014, plaintiffs'
counsel submitted plaintiffs' half of the Pretrial Order to defense counsel. (Longobardi Aff. ¶ 223;
Arenson Aff. ¶ 31.) On November 19, 2014, defendants served all eighteen plaintiffs individual
offers of judgment totaling approximately $1.2 million. (Longobardi Aff. ¶ 223; Arenson Aff. ¶ 32;
Mellk Aff. ¶ 14.) On December 3, 2014, plaintiffs sent eighteen individual written responses to the
offers of judgment; two plaintiffs accepted and sixteen rejected the offers. (Arenson Aff. ¶ 33;
Mellk Aff. ¶ 15.)

        On December 23, 2014, with my assistance, the parties agreed to settle plaintiffs'
claims for $1,650,000. (Dkt. No. 129: 12/23/14 Settlement Conf. Tr.; Longobardi Aff. ¶ 225;
Arenson Aff. ¶ 37; Mellk Aff. ¶ 16.) The parties agreed to negotiate plaintiffs' attorneys' fees at a
later date or, if no agreement could be reached, that the Court would decide the amount of fees.
(See Settlement Conf. Tr.; Mellk Aff. ¶ 17; Arenson Aff. ¶ 37.)

        On March 30, 2015, plaintiffs filed their pending attorneys' fees motion. (Dkt. No.
142: Notice of Motion.) On May 18, 2015, the motion was referred to me for a Report and
Recommendation. (Dkt. No. 158: 5/18/15 Referral Order.)

7

## ANALYSIS

### I.    AS PREVAILING PARTIES, PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosp. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.) ("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").[4/]

Defendants do not dispute plaintiffs' entitlement to attorneys' fees and costs, challenging only the amount sought.  (See Dkt. No. 156: J.V. Car Wash Fee Br. at 1.)

---

[4/]    See also, e.g., Garcia v. Jambox, Inc., 14 Civ. 3504, 2015 WL 2359502 at *2 (S.D.N.Y. Apr. 27, 2015) ("The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees 'to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting Aguilera v. Cookie Panache ex rel Between the Bread, Ltd., 13 Civ. 6071, 2014 WL 2115143 at *2 (S.D.N.Y. May 20, 2014)); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.) ("Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . . .'").

8

## II.   CALCULATING REASONABLE ATTORNEYS' FEES

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called

lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by

a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v.

Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[5] Particularly in awarding statutory

attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.

There remain other considerations that may lead the district court to adjust the fee upward or

downward . . . ." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill

Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008)

("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the

lodestar based on case-specific considerations."); Lane Crawford LLC v. Kelex Tracing (CA) Inc.,

12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), report & rec. adopted,

2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved

of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway

Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues.
> First, in accordance with our understanding of the aim of fee-shifting statutes, the
> lodestar looks to "the prevailing market rates in the relevant community."
> Developed after the practice of hourly billing had become widespread, the lodestar
> method produces an award that roughly approximates the fee that the prevailing
> attorney would have received if he or she had been representing a paying client who
> was billed by the hour in a comparable case. Second, the lodestar method is readily
> administrable, and unlike the Johnson approach, the lodestar calculation is

---

[5]   The Second Circuit requires contemporaneous time records as a prerequisite for awarding
attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147
(2d Cir. 1983).

"objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

### III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[6]

---

[6]     Although the Supreme Court's _Perdue_ opinion appeared to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190, which relied on among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit. See, e.g., K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly
(continued...)

As the fee applicant, plaintiffs "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[7/] In support of their application, plaintiffs provided the Court with contemporaneous time records that specify the date, the time expended, and a detailed description of the services provided. (Dkt. No. 151: Longobardi Aff. Exs. A & B: Billing Records.) Plaintiffs also submitted examples of retainer agreements with hourly-paying clients in other employment matters (Longobardi Aff. Ex. D), their retainer agreements with the plaintiffs in this case (Longobardi Aff. Ex. E), and affidavits from several employment law lawyers attesting that their rates are reasonable (Dkt. No. 144: Goldstein Aff.; Dkt. No. 145: Raskin Aff.; Dkt. No. 146: Ambinder Aff.; No. 150: Estreicher Aff.; Dkt. No. 152: Orlofsky Aff.).

### A.    Degree of Success Obtained

According to the Supreme Court, "'the most critical factor' in determining the

---

[6/]    (...continued)
rate, 'the district court should consider, among others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013). In any event, the result would not differ here under either approach.

[7/]    Accord, e.g., Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

11

reasonableness of [an attorney] fee award 'is the degree of success obtained.'" <u>Farrar</u> v. <u>Hobby</u>, 506

U.S. 103, 114, 113 S. Ct. 566, 574 (1992) (quoting <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. 424, 436, 103

S. Ct. 1933, 1941 (1983)).[8/]

    Plaintiffs recovered $1,650,000 (inclusive of the two accepted offers of judgment)

via the settlement agreement, for eighteen plaintiffs, or an average of $91,666.67 per plaintiff, with

all but two who worked for defendants for only short periods of times, recovering more than $20,000

and some over $189,000 each.  (Dkt. No. 143: Arenson Aff. ¶¶ 37, 40.)  According to Prof. Samuel

Estreicher of New York University School of Law,  the average per-claimant recovery in all FLSA

class action settlements is $5,830 and the "results achieved by Plaintiffs' counsel in this case also

marks the highest per-claimant recovery (by far) that has been secured in the low-pay car wash

industry."  (<u>See</u> Dkt. No. 150: Estreicher Aff. ¶¶ 1, 7.)

    In short, plaintiffs' counsel obtained a very successful settlement result for plaintiffs.

**B.**  **Reasonable Hourly Rates**

    **1.**  **Plaintiffs' Counsel's $500 Hourly Rate Is Reasonable**

    Plaintiffs are represented by Steven Arenson and Laura Longobardi, a partner and

of counsel, respectively, at Arenson, Dittmar & Karban ("ADK").  (Dkt. No. 151: Longobardi Aff.

¶ 1; Dkt. No. 153: Arenson Aff. ¶¶ 1, 13.)  ADK's fee calculations use an hourly rate of $500  each

for Arenson and Longobardi, which is their billing rate for private hourly paying clients.

(Longobardi Aff. ¶ 245; Arenson Aff. ¶ 10; <u>see</u> Longobardi Aff. Exs. A-B: Billing Entries.)

Defendants argue that "the hourly rates for Mr. Arenson and Ms. Longobardi should be reduced,

---

[8/]  <u>Accord</u>, <u>e.g.</u>, <u>Torres</u> v. <u>Gristede's Operating Corp.</u>, 519 F. App'x 1, 5 (2d Cir. 2013);
<u>Vilkhu</u> v. <u>City of N.Y.</u>, 372 F. App'x 222, 224 (2d Cir. 2010); <u>Imbeault</u> v. <u>Rick's Cabaret</u>
<u>Int'l Inc.</u>, 08 Civ. 5458, 2009 WL 2482134 at *9 (S.D.N.Y. Aug 13, 2009) (Lynch, D.J.).

12

respectively, to $350 and $275." (Dkt. No. 156: J.V. Car Wash Fee Br. at 8.)  According to

defendants:

> First, the $500/hour rates charged by both of these attorneys . . . are unacceptably
> high in light of the range of fees for wage hour practitioners in the S.D.N.Y. and
> rates charged to paying clients in this jurisdiction. Second, ADK is a small firm and
> neither attorney appears to be an especially experienced wage-and-hour multi-
> plaintiff practitioner. Third, Ms. Longobardi's rate should be further reduced given
> that her role in this litigation was clearly that of an associate, and sometimes even
> a paralegal.

(J.V. Car Wash Fee Br. at 8, record citations omitted.)

The Court finds that Arenson's and Longobardi's requested $500 hourly rate is

reasonable.  In determining reasonable hourly rates, the Court must consider "the range of rates

plaintiff's counsel actually charge their clients. This is obviously strong evidence of what the market

will bear." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); see also, e.g., Arbor

Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 n.3, 190 (2d

Cir. 2008); Nunez v. Francis Deli Grocery, 13 Civ. 4894, 2015 WL 1963630 at *7 (S.D.N.Y. Apr.

30, 2015) (attorney's customary hourly rate among factors to be considered in determining lodestar,

quoting Arbor Hill); Bazignan v. Team Castle Hill Corp., 13 Civ. 8382, 2015 WL 1000034 at *4

(S.D.N.Y. Mar. 5, 2015) (same); Magnuson v. Newman, 10 Civ. 6211, 2014 WL 3767006 at *1

(S.D.N.Y. July 31, 2014) (same). ADK's requested rates are the amounts that both Arenson and

Longobardi actually charge to their hourly-paying clients in other employment matters. (Arenson

Aff. ¶ 10; Longobardi Aff. ¶ 245; see also Longobardi Aff. Ex. D: Retainer Agreements.)  In

addition, the retainer agreements signed by plaintiffs in this case set forth a $500 hourly rate as an

alternative to the contingency fee basis for compensation. (Longobardi Aff. Ex. E: Retainer

Agreements.)[9]

       Plaintiffs' counsel are highly experienced, in general and as employment litigators.[10]

Arenson, a graduate of Columbia Law School, has practiced for twenty-eight years. (Dkt. No. 143:

Arenson Aff. ¶¶ 2-3.)  For the past twenty years, his practice has "focused almost exclusively" on

litigating employment cases, including numerous wage and hour disputes. (Arenson Aff. ¶¶ 4-5.)

Arenson also has "lectured on the litigation of multi-plaintiff employment cases at New York

---

[9]    Defendants argue that because plaintiffs' retainer agreements contain a contingency fee provision allowing for fees equal to one-third of any recovery on plaintiffs' behalf, the total recoverable fees should be capped at $500,000.  (J.V. Car Wash Fee. Br. at 9 n.7.)  This argument is unpersuasive, however, because a contingency fee agreement does not impose a ceiling on otherwise reasonable attorney's fees in FLSA and other civil rights cases. See, e.g., Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S. Ct. 939, 944 (1989) ("[A] contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statue and its policy and purpose."); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 5 (2d Cir. 2013) ("[A]lthough the district court was permitted to cap the fee request at standard contingency-fee levels, it was not required to do so where, as here, it concluded that higher fees were reasonably incurred."); Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 142 (2d Cir. 2007) ("It is true that a reviewing authority may consider the contingency fee paid in determining a reasonable attorney's fee, it is also undisputed, however, that the contingency fee may not serve as a cap on an attorney fee award." (citations omitted)); Gortat v. Capala Bros., No. 07 CV 3629, 2014 WL 3818614 at *12 (E.D.N.Y. Aug. 4, 2014).  Moreover, defendants mis-read counsel's retainer agreements with the plaintiffs -- the agreements entitle counsel to the greater of statutory attorneys' fees, the one-third contingency fee or the hourly fee.  (See Longobardi Aff. Ex. E: Retainer Agreements.)

[10]    Defendants argue that "[b]y their own admissions, Plaintiffs' Counsel have limited wage-and-hour experience, and have handled only one other multi-plaintiff wage hour matter (which according to the PACER docket was settled fairly early on in the litigation)." (J.V. Car Wash Fee Br. at 11.)  However, "[c]ourts in the Second Circuit have held that a fee award should be based on an attorney's overall level of experience, not necessarily on the attorney's experience in a particular field." G.B. ex rel N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 433 n.16 (S.D.N.Y. 2012) (collecting cases); see also, e.g., Robinson v. City of N.Y., 05 Civ. 9545, 2009 WL 3109846 at *4-5 (S.D.N.Y. Sept. 29, 2009) (Lynch, D.J.) (rejecting defendants' argument that "plaintiffs' attorneys' many years of experience in civil rights litigation are not equivalent to extensive employment litigation experience that would justify the higher rates" because plaintiffs' experience was transferrable).

14

University School of Law." (Arenson Aff. ¶ 8.)  Longobardi, a graduate of Fordham University

School of Law, similarly has over twenty-eight years of litigation experience, and since joining

ADK in 2005 has "worked on numerous state and federal employment litigations, including

harassment, discrimination, and wage-and-hour cases." (Longobardi Aff. ¶¶ 242-43.)

ADK has submitted affidavits from several experienced employment litigators

(including a former federal judge), who all attest that a $500 hourly rate is reasonable and

appropriate for attorneys with Longobardi's and Arenson's overall experience.  (See Dkt. No. 144:

Goldstein Aff. ¶ 20; Dkt. No. 145: Raskin Aff. ¶¶ 10-13; Dkt. No. 146: Ambinder Aff. ¶¶ 6-9; Dkt.

No. 150: Estreicher Aff. ¶ 9; Dkt. No. 152: Orlofsky Aff. ¶¶ 12-14.)[11/]  Defendants object that these

are "declarations from plaintiff-side employment lawyers" that "should be disregarded as self-

serving and of no probative value" because those attorneys "stand to benefit from the Court's

approval" of ADK's requested fees in future litigation.  (J.V. Car Wash Fee Br. at 10.)  Courts,

however, routinely consider affidavits from experienced attorneys in determining the reasonableness

of requested fees. See, e.g., Gortat v. Capala Bros., 2014 WL 3818614 at *3 n.1, *7; Spencer v. City

of N.Y., 06 Civ. 2852, 2013 WL 6008240 at *4 (S.D.N.Y. Nov. 13, 2013);  Adorno v. Port Auth.

of N.Y & N.J., 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010); Mugavero v. Arms Acres, Inc., 03 Civ.

5724, 2010 WL 451045 at *5 n.3 (S.D.N.Y. Feb. 9, 2010); Imbeault v. Rick's Cabaret Int'l Inc., 08

Civ. 5458, 2009 WL 248 2134 at *3 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.); Rozell v. Ross-Holst,

576 F. Supp. 2d at 545.

---

[11/]    Although defendants are correct that the attorneys who submitted affidavits have
backgrounds distinguishable from Arenson and Longobardi in various ways (J.V. Car Wash
Fee Br. 10-11), all attest to their knowledge of the prevailing market rates for employment
litigators and their familiarity with ADK's work. (Goldstein Aff. ¶¶ 10-21; Raskin Aff. ¶¶
7, 9-11, 13 ,15; Ambinder Aff. ¶¶ 5-7, 9; Estreicher Aff. ¶ 9; Orlofsky Aff. ¶¶ 9-14.) Thus,
their statements clearly are relevant.

15

Finally, recent decisions in this Circuit approve hourly rates of $500 or more for experienced employment litigators. See, e.g., Scott v. City of N.Y., 643 F.3d 56, 59-60 (2d Cir. 2011) (a $550 hourly rate in an FLSA case was reasonable for an attorney with significant trial experience); Guallpa v. NY Pro Signs, Inc., 11 Civ. 3133, 2014 WL 2200393 at *9-10 (S.D.N.Y. May 27, 2014) (approving hourly partner rates in FLSA case of $600 and $500 for partners with, respectively, nineteen and thirteen years of experience), report & rec. adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'" (quoting Clover v. Shiva Realty of Mulberry, Inc., 10 Civ. 1702, 2011 WL 1832581 at *5 (S.D.N.Y. May 13, 2011), aff'd, 479 F. App'x 402 (2d Cir. 2012)), aff'd, 519 F. App'x 1 (2d Cir. 2013); DeCurtis v. Upward Bound Int'l, Inc., 09 Civ. 5378, 2011 WL 4549412 at *7-8 (S.D.N.Y. Sept. 27, 2011) ($550 hourly rate reasonable in employment discrimination and retaliation case for partner with sixteen years of practice experience who regularly charged paying clients that rate), aff'd sub nom., De Curtis v. Ferrandina, 529 F. App'x 85 (2d Cir. 2013); Adorno v. Port Auth. of N.Y & N.J., 685 F. Supp. 2d at 513-14 ($550 rate reasonable in employment discrimination case for partner with over thirty years of experience).[12]

## 2.   Defendants' Arguments For Reduction Of The Hourly Rate

Defendants argue that Arenson's and Longobardi's rates should be reduced because

---

[12]   Indeed, a recent decision in this district approved ADK's $500 hourly rates for Arenson and Longobardi as part of a settlement agreement in an FLSA case following a fairness hearing. (See 10 Civ. 5771, Dkt No. 132: Pl. Fairness Hearing Br. at 14; 10 Civ. 5771, Dkt. No. 134: 8/23/13 Order Approving Settlement ¶ 16.)

16

ADK is a small firm with low overhead costs. (J.V. Car Wash Fee Br. at 9-10.) Neither lower overhead costs nor the firm's small size, however, are sufficient reasons to reduce an otherwise reasonable hourly fee. See, e.g., Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 143 n.6 (2d Cir. 2007) ("While it is true that courts . . . deciding reasonable fees can and should take into consideration many aspects of an attorney's practice to ensure a reasonable hourly rate, it is long established that 'courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner.'" (citation omitted)); McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 98 n.6 (2d Cir. 2006) (although courts may look to the rates charged by similarly situated firms "based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs," courts should not automatically reduce the reasonable hourly rate for a solo practitioner because "[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate" and "overhead merely helps account for why some attorneys charge more for their services."); Custodio v. American Chain Link & Const., Inc., 08 Civ. 7148, 2014 WL 116147 at *2 & n.8 (S.D.N.Y. Jan. 13, 2014); Wong v. Hunda Glass Corp., 09 Civ. 4402, 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) ("Although Defendant contends that since [plaintiff's counsel] is a small firm, it should be awarded a lower hourly rate, '[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower rate.'"); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *3 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.) (a small firm's lower overhead costs are "not likely to factor heavily into the hypothetical reasonable client's calculus of what to pay for legal services and accordingly, does not necessarily imply reductions of the requested rates . . . .")

Defendants also argue that Longobardi's hourly rate should be limited to $275

because her "role in this litigation was clearly that of an associate, and sometimes even a paralegal." (J.V. Car Wash Fee Br. at 8.)  In particular, defendants claim that ADK's invoices show that Longobardi "was responsible for, inter alia, drafting motions, pleadings and letters for Mr. Arenson's review, handling day-to-day discovery disputes (albeit while conferring with Mr. Arenson), conducting legal research, conferring with Mr. Arenson about each task she performed, and performing the routine tasks of litigation generally performed by more junior attorneys." (J.V. Car Wash Fee Br. at 12.)  In response, plaintiffs point to Longobardi's independent role in many aspects of the case, including, inter alia, defending the depositions of seventeen of the eighteen plaintiffs, deposing defendants' accountant, conducting a three-day deposition of Vasquez, and preparing and arguing plaintiffs' motion to lift the bankruptcy stay.  (Dkt. No 162: Lora Reply Fee Br. at 15; Dkt. No. 159: Longobardi Reply Aff. ¶¶ 6-8.)  Plaintiffs also challenge defendants' characterization of Arenson's role as supervisory, asserting instead that Longobardi simply conferred with Arenson "in order to ensure that we each knew what the other was doing, so that we were working effectively and efficiently." (Longobardi Reply Aff. ¶¶ 9-10.)  The Court agrees that, in general, Longobardi acted as a partner.

Defendants also claim that "[m]any of Ms. Longobardi's entries reflect time billed for paralegal work." (J.V. Car Wash Fee Br. at 13.)  Plaintiffs' billing entries acknowledge that Longobardi performed some paralegal-level work and reduced her hourly rate to $125 for that work. (E.g., Longobardi Aff. Ex. A: 12/20/11 Billing Entry (0.3 hours "attn to case file"); 6/3/14 Billing Entry (0.1 hours for "email to Veritext adjourning dep").)  Defendants agree that $125 is the proper hourly rate for paralegal work, but assert that "[w]hile ADK reduced Ms. Longobardi's rates to that of a paralegal for some . . . tasks, ADK failed to do so across-the-board.  Indeed, based on review of the invoices, it appears as if approximately 18% . . . of Ms. Longobardi's time entries are for work

18

that should have been handled by a paralegal." (J.V. Car Wash Fee Br. at 13.)  In response, plaintiffs concede that 16.2 hours of Longobardi's time should be reclassified at the paralegal rate, reducing the fees sought by \$6,075. (Longobardi Reply Aff. ¶ 13; see page 1 n.1 above.)[13]

The Court agrees that some of Longobardi's entries beyond what plaintiffs concede reflect work that should have been billed at a lower associate or paralegal rate.  As set forth in section II.C. below, for that and other reasons, the Court is reducing plaintiffs' overall fees by ten percent. (See Part II.C. below.)

C.    **Time Reasonably Expended**

1.    **Legal Principles**

In determining whether the amount of hours billed is reasonable "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)).[14]  "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Bliven v. Hunt, 579 F.3d at 213.[15]  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney

----

[13]    Plaintiffs also concede that an additional 12.1 hours of work previously billed at a paralegal rate should actually have been classified as non-billable clerical work, further reducing their fees by \$1,512.50. (Longobardi Reply Aff. ¶ 13 n.3; see page 1 n.1 above.)

[14]    Accord, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, No. 09-CV-121, 2015 WL 344896 at *12 (E.D.N.Y. May 28, 2015);  Abdell v. City of N.Y., 05 Civ. 8453, 2015 WL 898974 at *2 (S.D.N.Y. Mar. 2, 2015); Deng v. 278 Gramercy Park Grp. LLC, 12 Civ. 7803, 2014 WL 1016853 at *12 (S.D.N.Y. Mar. 14, 2014), report & rec. adopted, 2014 WL 4996255 (S.D.N.Y. Oct. 7, 2014).

[15]    Accord, e.g., Dominguez v. B S Supermarket, Inc., No. 13-CV-7247, 2015 WL 1439880 at (continued...)

19

would have engaged in similar time expenditures.'" Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008

WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.

1992), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993)), report & rec. adopted, 2009 WL 424136

(S.D.N.Y. Feb. 19, 2009); see, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111

(2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of

time spent as reflected in contemporaneous time records, and then decides how much of that time

was 'reasonably expended.' If the district court finds that some of the time was not reasonably

necessary to the outcome of the litigation, it should reduce the time for which compensation is

awarded accordingly." (citation omitted)).[16]

Plaintiffs cannot recover for time spent by attorneys completing administrative tasks.

See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, 2015 WL

344896 at *13; DeMarco v. Ben Krupinksi Gen. Contractor, Inc., No. 12-CV-0573, 2014 WL

3696020 at *9 (E.D.N.Y. July 22, 2014); Lane Crawford LLC v. Kelex Trading (CA) Inc., 12 Civ.

9190, 2013 WL 6481354 at *8 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), report & rec. adopted, 2014

WL 1338065 (S.D.N.Y. Apr. 3, 2014); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421,

431-32 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when

attorneys engage in less skilled work, like filing and other administrative tasks [such as] . . . faxing

and mailing documents, making copies, filing, scanning, preparing documents for electronic filing,

electronic file management, binding documents, and Bates stamping."), aff'd, 487 F. App'x 619 (2d

---

[15]   (...continued)
       *16 (E.D.N.Y. Mar. 27, 2015); Abdell v. City of N.Y., 2015 WL 898974 at *2.

[16]   See also, e.g., Dominguez v. B S Supermarket, Inc., 2015 WL 1439880 at *16; Deng v. 278
       Gramercy Park Grp. LLC, 2014 WL 1016853 at *12.

Cir. 2012).[17]

  Second, case law also makes clear that the Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did.  See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, 2015 WL 344896 at *12; Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *8; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10 & n.19; VFS Fin., Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) ("Having reviewed [plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing entries are overly vague or duplicative, and that a percentage fee reduction therefore is appropriate."); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.  Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." (citations, quotations & fn. omitted)).[18]

---

[17] See also, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), report & rec. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (Peck, M.J.); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011) (Berman, D.J. & Peck, M.J.) (reducing fees where entries "reflect work done at an attorney rate that could and should have been done by a paralegal or secretary"); Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010) ("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work [such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks to discuss order to show cause and default judgment procedures."), report & rec. adopted, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

[18] See also, e.g., Prince of Peace Enter., Inc. v. Top Quality Food Mkt. LLC, 07 Civ. 349, 2014
(continued...)

Third, a reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work. See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *9; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys. . . . In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees . . . ." (citing cases)), report & rec. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *7 (E.D.N.Y. Mar. 11, 2011) (reduction warranted where brief "did not contain particularly complicated analyses" and omitted certain arguments entirely), report & rec. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Gesualdi v. Cirillo, No. 09-CV-4570, 2011 WL 666196 at *5 (E.D.N.Y. Jan. 3, 2011) (reduction warranted where "the 26.1 total hours billed on this matter do not reflect the quality of work submitted to the Court"), report & rec. adopted, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).[19]

---

[18]    (...continued)
WL 793084 at *7 (S.D.N.Y. Feb. 28, 2014), report & rec. adopted in relevant part, 2015 WL 456645 (S.D.N.Y. Feb. 3, 2015); Short v. Manhattan Apartments, Inc., 286 F.R.D. at 255 ("A court may reduce requested fees if the attorneys' documentation of their hours is vague . . . ."); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d at 636; Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.) (reducing attorney's hours where "some of the billing entries are vague and the time spent excessive"), report & rec. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July 28, 2011) (Peck, M.J.) ("When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing cases)).

[19]    See also, e.g., Dominguez v. B S Supermarket, Inc., 2015 WL 1439880 at *17 (10% reduction warranted where "the 80.4 hours spent by plaintiff's counsel on this case exceeds
(continued...)

### 2.   Application Of These Principles To Plaintiffs' Fee Request

Plaintiffs' counsel expended approximately 3,000 hours over the lengthy course of

this lawsuit. (See Dkt. No. 151: Longobardi Aff. Ex. A: Billing Records at 166-67: Longobardi Aff.

Ex. B: Billing Records at 56.) They originally sought $1,404,456.23 in fees, an amount that

included a voluntary eight percent reduction from their alleged $1,535,962.43 in actual fees based

on a variety of measures meant to reduce potential duplicative billing. (Longobardi Aff. ¶¶ 227-36;

see page 1 n.1 above.) In response to defendants' objections, plaintiffs now concede that ninety-five

hours of their work was extraneous, 16.2 hours that was billed at a partner rate should have been

billed at a paralegal rate, and 12.1 paralegal hours should have been classified as non-billable

clerical work, for a $55,087.50 reduction, bringing their fees sought to $1,349,386.73.  (See page

1 n.1 above.)

The Court has reviewed plaintiffs' counsel's underlying time records and finds that

some of Longobardi's time billed at $500 per hour reflect work that should have been billed at a

---

19/    (...continued)
the amount of time that reasonably should have been spent"); Deng v. 278 Gramercy Park
Grp. LLC, 2014 WL 1016853 at *20-21 (reduction warranted for, inter alia, disproportionate
time spent on one plaintiff's claims although they were the same as the other plaintiff's
claims, overstaffing, duplicative work, and failure to submit any documentation to support
fees for time spent preparing "a memorandum that is remarkably devoid of law"); Truong
v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3
(S.D.N.Y. Jan. 12, 2011) ("The Court is unclear as to why this document, presumptively a
standard form order, took up to 8.75 hours of an associate[']s time.  Thus the Court reduces
[counsel's] billables . . . ."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665,
2010 WL 5538552 at *5 (S.D.N.Y. Dec. 6, 2010) (reduction warranted where "attorneys
spent a total of 7.6 hours on the drafting of a cease-and-desist letter and related activities"
and excessive time was spent drafting a "nearly identical" document that "appears to be
boilerplate", report & rec. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); Microsoft
Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *16 (E.D.N.Y.
Sept. 10, 2008) (reducing fees where attorney "spent an excessive amount of time [1.9 hours,
or $950] composing a two-page letter to the Court requesting an extension of the discovery
deadline").

lower associate rate.[20]  Similarly, some of Longobardi's entries that were billed at partner rates

reflect work that should have been billed at a paralegal rate.[21]  As a result, plaintiffs conceded that

an unspecified 16.2 hours of Longobardi's time should be reclassified at the paralegal rate.

(See page 1 n.1 above.) Nonetheless, in combination with Longobardi's work that should have been

---

[20]   For example, Longobardi Aff. Ex. A: Billing Records: 8/3/11 (0.5 hours to "[r]eview prior car wash complaints and PACER search in SDNY and EDNY to confirm no pending FLSA collective actions against potential defendants," 0.8 hours to "research car wash cases in 2d Cir.," and 0.9 hours to "review additional forms of car wash complaints."); 6/12/12 (3 hours to "[d]raft letter to Judge Stanton requesting pre-motion conference on proposed motion for leave to amend complaint," 0.3 hours on legal research); 5/30/13 (1.4 hours to "revise initial disclosures and review witness statements"); 3/12/14 (5.4 hours total to draft letter to Judge Stanton regarding defense counsel's motion to withdraw Vazquez's default during deposition, and review deposition transcripts); 5/13/14-5/23/14 (approximately 15 hours spent reviewing case law on incompetency and preparing memorandum for Dr. Kleinman).

[21]   For example, Longobardi Aff. Ex. A: 8/11/11 (.8 hours for "Email from DOS re Vazquez car wash entity and research NYS DOS re same"); 12/2/11 (0.7 hours to prep letter of instructions to process server); 3/26/14 (0.5 hours to prep authorizations to obtain medical information on Vazquez and review documents produced by defendants for information to complete same, 2.4 hours on "revisions to dep notice and schedules for subpoena to Citrin Cooperman; prep of notice, subpoena and attachments for service on CC and LJM."); 6/6/2014 (2.2 hours for "review plaintiff depositions for information on hours worked."); 10/30/14 (0.4 hours spent on research on location of manufacturing facilities of products used by defendants).

Many of Longobardi's billing entries that defendants assert should have been charged at a paralegal rate relate to her work on the plaintiffs' damages calculation spreadsheet. (See generally Dkt. No. 157: Mellk Aff. Ex. B.) Plaintiffs, however, have reduced the fees sought in connection with their damages calculation by $47,500, or nearly fifty percent. (Dkt. No. 159: Longobardi Reply Aff. ¶ 31; see page 25 below.) Those reductions are sufficient.

Defendants also argue that ADK billed for non-compensable clerical work. (J.V. Car Wash Fee Br. at 20.) Plaintiffs concede that their initial request contained some time entries at paralegal rates that should have been classified as non-billable clerical work. (See Longobardi Reply Aff. ¶ 13 n.3.) They therefore have reclassified 12.1 hours of that time as clerical work, resulting in a $1,512.50 reduction in fees sought. (Id.) That reduction is already incorporated into the $1,349,386.73 that plaintiffs currently seek in fees. (Longobardi Reply Aff. ¶ 41; see page 1 n.1 above.) The ten percent across-the-board fee reduction that the Court is imposing (see page 29 below) takes into account any additional time that should not have been billed.

24

billed at an associate rate, [t]his "unreasonable allocation of the litigation tasks involved" resulted

in excessive billing, which justifies a reduction. Microsoft Corp. v. Computer Care Ctr., Inc., No.

06-CV-1429, 2008 WL 4179653 at *15-16 (E.D.N.Y. Sept. 10, 2008) ("[T]he litigation was handled

virtually single-handedly by . . . a partner . . . [who] performed nearly all the routine daily litigation

tasks in this action. Thus, [he] billed at a partner's rate for a variety of tasks that could have been

performed by an associate or even clerical staff. . . .  [Plaintiff's attorneys'] fees should be

significantly reduced."); see, e.g., Prince of Peace Enter., Inc. v. Top Quality Food Mkt, LLC, 07

Civ. 349, 2014 WL 793084 at *9 (S.D.N.Y. Feb. 28, 2014) (although "it is understandable that a

small firm . . . might not have the wherewithal to retain a full-time paralegal, their time for such

tasks should have been billed at paralegal rates appropriate for a small firm."), report & rec. adopted

in relevant part, 2015 WL 45665 (S.D.N.Y. Feb. 3, 2015); Lane Crawford LLC v. Kelex Trading

(CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *9 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.) (reduction

warranted for hours billed at partner rates including "drafting and revising civil cover sheet,"

drafting "standard forms for service," and "reviewing court orders"), report & rec. adopted, 2014

WL 1338065 (S.D.N.Y. Apr. 3, 2014); Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456,

2013 WL 174226 at *9 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.) (reduction warranted for entries billed

at partner rates including "receiving and reviewing scheduling order," "receiving Certificate of

Default," and "receiving and reviewing inquest order"), report & rec. adopted, 2013 WL 1234911

(S.D.N.Y. Mar. 26, 2013); Prescia v. U.S. Life Ins. Co., 10 Civ. 2518, 2011 WL 70569 at *3

(S.D.N.Y. Jan. 6, 2011) ("[E]ntries such as . . . 'check Court website for updates' . . . could have been

done by a paralegal or some other employee who does not bill at the rate $350.00 per hour.").

Defendants also argue that Arenson's review of Longobardi's work was duplicative.

(J.V. Car Wash Fee Br. at 19-20.)  The Court disagrees, for the reasons elaborated in Longobardi

Aff. ¶¶ 228-33. Defendants also challenge Arenson's and Longobardi's total hours billed as excessive on numerous grounds, claiming that they spent unreasonable amounts of time preparing (a) their amended complaint, (b) a confidential settlement memorandum, (c) the pre-trial order, and (d) damage analysis spreadsheets; interviewing twenty-three non-party witnesses and preparing affidavits from twenty-one of them; and monitoring defendants' bankruptcy proceedings. (See J.V. Car Wash Fee Br. 15-19.)

Defendants argue that the approximately 195 total hours billed for work on the plaintiffs' damages analysis is excessive. (J.V. Car Wash Fee Br. at 16.) Plaintiffs concede that their billing for the damages spreadsheet should be reduced by ninety-five hours, totaling $47,500. (Longobardi Reply Aff. ¶ 31; see page 1 n.1 above.) In light of (a) the large number of plaintiffs in this case; (b) plaintiffs' updates to their initial calculations made in response to additional named and opt-in plaintiffs, and to new retaliation claims (Longobardi Reply Aff. ¶ 27; see, e.g. Longobardi Ex. A: Billing Records: 6/5/12 (0.25 hours meeting with two plaintiffs to discuss their being fired for their involvement in the case) & 6/20/12 (0.9 hours on revised damage calculations for terminated plaintiffs)), and to account for the effect on plaintiffs' damages of bad weather (when the car wash would have been closed) (Longobardi Reply Aff. ¶¶ 28-29; see, e.g., Longobardi Aff. Ex. A. Billing Records: 2/6/14 (4.5 hours research on weather data and potential weather experts) & 2/7/14 (2.7 hours continued research on weather data and revisions to damages computations), and (c) plaintiffs' argument that "the accuracy and thoroughness of our spreadsheets resulted in the Defendants using them as a basis for subsequent settlement negotiations" (Longobardi Reply. Aff. ¶ 31 n.6), the Court considers this reduction by nearly fifty percent of the hours billed for damages

calculations sufficient.[22/]

        Defendants further argue that "[f]or inexplicable reasons, along with litigating the underlying wage-and-hour matter, Plaintiffs' Counsel remained intimately involved in the bankruptcy proceedings . . . despite the existence of an attorney appointed by the Bankruptcy Court to represent the interests of the unsecured creditors (Plaintiffs in this action), who has submitted his own fee application to the Bankruptcy Court." (J.V. Car Wash Fee Br. at 3-4; see also id. at 17-19.) Specifically, while defendants do not challenge the "majority of ADK's advocacy in connection with their effort to lift the automatic stay" prior to November 26, 2013 (J.V. Car Wash Fee Br. at 17),[23/] defendants argue that thereafter, plaintiffs' counsel's involvement in the bankruptcy proceedings was not necessary for the continued "'prosecution' of the FLSA litigation," primarily because of the formation of a Creditors Committee and the appointment of counsel to act on its behalf (J.V. Car Wash Fee Br. at 18).  This argument is unpersuasive in the circumstances of this case.

        Plaintiffs' counsel have offered a detailed, and factually uncontested, account of their reasons for remaining involved in the bankruptcy.  (See Longobardi Aff. ¶¶ 181-217.)  For example,

---

[22/]    The reduction is already incorporated into the $1,349,386.73 that plaintiffs currently seek in fees. (Longobardi Reply Aff. ¶ 41; see page 1 n.1 above.)

[23/]    Defendants do claim that the approximately 120 hours spent by plaintiffs' counsel with respect to their work to lift the stay is "an amount that is excessive on its face for one month's work." (J.V. Car Wash Fee Br. at 17 n.15.) The period in question, however, is actually six weeks, from October 16, 2013 through November 26, 2013. (See Longobardi Aff. Ex. B: 10/16/13-11/26/13 Billing Entries.) ADK's work during that period included determining strategy for dealing with the bankruptcy, meeting with plaintiffs to advise them of the bankruptcy filing, preparing proofs of claim on plaintiffs' behalf, seeking pro hac vice admission in New Jersey, preparing motions for the joint administration of the defendants' individual bankruptcies, and preparing the motion to lift the stay itself. (See Longobardi Aff. ¶¶ 112-22; Longobardi Reply Aff. ¶ 21; Longobardi Aff. Ex. B: 10/16/13-11/26/13 Billing Entries.) The Court does not find the work, or the hours expended, to be excessive.

Longobardi's appearance at a February 2014 meeting of Vazquez's creditors is reasonable given that "Vazquez was giving sworn testimony at this meeting on matters implicated in the FLSA Action at a time when his deposition in the FLSA action was still open." (Longobardi Aff. ¶¶ 197-98.) Indeed, Vazquez's testimony at the meeting revealed "the existence of various books and records for the Car Wash Defendants, that were supposedly maintained at the office of the accountants for the Car Wash defendants – which had not been produced prior to the start of his deposition." (Longobardi Aff. ¶ 198.) Similarly, plaintiffs assert that at a December 2013 creditors meeting, Vazquez's responses to their counsel's questions about the manufacturer of some of the machinery/equipment listed on his schedules contradicted Vazquez's claims in this case that defendants were not engaged in interstate commerce. (Longobardi Aff. ¶¶ 187-88.) Thus, ADK's involvement in the bankruptcy proceedings was necessary for pursuing this complex case with a defendant (Vazquez) who was less than forthcoming. See, e.g., Easterly v. Tri-Star Transp. Corp., 11 Civ. 6365, 2015 WL 337565 at *10 (S.D.N.Y. Jan. 23, 2015) (awarding fees in FLSA case for time plaintiff's counsel spent "on related matters including discovery disputes, settlement discussions, depositions, a summary judgment motion, the bankruptcy of individual defendants, and withdrawal of opposing counsel." (emphasis added)).

The challenged billing for non-party witness interviews was not excessive given that there were eighteen plaintiffs working at several defendant car washes. Endeavoring "to obtain statements from at least one non-party witness for each of them" plus a handful of other non-parties (see Longobardi Reply Aff. ¶ 16), was entirely reasonable, and if it was time-consuming, that merely reflects the complexity of an eighteen-plaintiff lawsuit. Indeed, plaintiffs conducted the interviews efficiently, interviewing and drafting statements quickly, often meeting with multiple witnesses at

28

a time.[24] Similarly, plaintiffs' explanation that the length of their proposed pretrial order reflected the number of plaintiffs, the complexity of each plaintiff's employment history, and the hope that its length could be reduced by stipulation (Longobardi Reply Aff. ¶¶ 33-34), is credible, as is their explanation that the ninety-three hours spent preparing it includes time that Arenson spent meeting or speaking individually with each of the eighteen plaintiffs to confirm the proposed findings of fact (Longobardi Reply Aff. ¶ 35).

Nonetheless, despite the overall complexity of the case and defendant Vazquez's misconduct, the Court agrees with defendants that some of plaintiffs' billing entries involve excessive amounts of time given the task at hand. For example, from December 15, 2014 through December 18, 2014, Arenson and Longobardi billed a combined total of nearly thirty-one hours drafting a confidential settlement memorandum (see Longobardi Aff. Ex. A: Billing Records: 12/15/14-12/18/14 Entries), even though they had previously billed in excess of fifty hours to prepare a prior mediation statement, and the underlying facts of the case remained largely unchanged (see Billing Records: 1/3/13 - 3/5/13 Entries).[25] Similarly, Arenson and Longobardi spent approximately fifty-seven hours responding to defendants' Rule 68 offers of judgment and

---

[24]   See, e.g., Longobardi Reply Aff. ¶ 16; Longobardi Aff. Ex. A: Billing Records: 3/17/13 (7 hours spent on meeting witnesses, interviewing them, drafting witness statements, and statements with witnesses and an interpreter); 4/4/13 (4 hours to meet with four witnesses, interview them, draft statements and review those statements with an interpreter. ); 5/5/13 (3.5 hours meeting with witnesses regarding plaintiffs' status as employees of the defendants); 5/8/13 (1.25 hours to meet with witness, interview him, and draft statement).

[25]   Plaintiffs argue that "[e]ach of Defendants' successive litigation counsel asserted different legal theories, either as defenses to liability or in mitigation of damages, which had not been addressed at the earlier mediation. As a result, there was much that had not been covered in the March 2013 mediation statement or in the draft pre-trial order, but which was relevant to the Plaintiffs' position on settlement." (Longobardi Reply Aff. ¶ 40.) Nonetheless, the Court considers the total time spent on the mediation and subsequent settlement memoranda to be excessive.

29

preparing sixteen individual rejection letters, even though the offers to which they were responding

were identical. (See 11/19/14-12/3/14 Billing Entries; Mellk Aff. ¶ 15 ("[O]ther than the amount

of the offers of judgment, the language of each of the 18 offers was identical and each offer was

contained in a 2 page document."); Longobardi Reply Aff. ¶ 38 (acknowledging that ADK spent

fifty-seven hours preparing Rule 68 responses).)[26/] In another instance, Longobardi spent over seven

hours drafting an affirmation in opposition to defense counsel's motion to withdraw and only a few

days later, another 1.7 hours revising it. (See 6/12/13 & 6/17/13 Billing Entries.) Given Arenson's

and Longobardi's experience as employment litigators, they should have been able to complete these

routine litigation tasks more efficiently.

For all the reasons discussed above, the $1,349,386.73 in fees sought by ADK should

be reduced by an additional ten (10) percent, reducing the total fee award to $1,214,448.06. See,

e.g., Gonzalez v. Scalinatella, Inc., --- F. Supp. 3d ----, 13 Civ. 3629, at *22-23 (S.D.N.Y. Jun. 12,

2015) (reducing excessive fees for one attorney by 10%); Lane Crawford LLC v. Kelex Trading

(CA) Inc., 2013 WL 6481354 at *10 (reducing attorneys' fees by 15% for excessive time and vague,

duplicative billing entries); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 515 (S.D.N.Y.

---

[26/]   Plaintiffs argue that the time spent was not excessive because "we had to meet with each
Plaintiff to explain the offer, advise him of the implications and repercussions of the offer,
and give him our recommendation as to whether he should accept or reject the offer" and
because "[i]n order to protect the plaintiffs who rejected the offers from potential negative
repercussions . . . we set forth in writing why we believed that those offers of judgment were
invalid under Rule 68" in an average time of "a little more than three hours on each
Plaintiff's offer of judgment." (Longobardi Reply Aff. ¶ 38.)  According to their billing
entries, however, counsel spent slightly less than ten hours in total meeting with the
plaintiffs to discuss the offers. (See 12/1/14-12/2/14 Billing Entries.)  And accepting that
plaintiffs spent additional time preparing responses that explained why they believed the
offers of judgment were invalid under Rule 68, they have not explained why a separate, five-
page response was necessary for each plaintiff or why analyzing the purported invalidity of
the offers should take as long as it did.  (See Longobardi Reply Aff. ¶¶ 36-38.)

2011) (Peck, M.J.) (reducing attorneys' fees by 7% for duplicative work and excess time spent on certain projects); Trustees of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp., 09 Civ. 9997, 2011 WL 767162 at *5 (S.D.N.Y. Mar. 4, 2011) (Peck, M.J.) (reducing attorneys' fees by 10%), report & rec. adopted in relevant part, 2011 WL 1641981 (S.D.N.Y. Apr. 29, 2011); VFS Fin., Inc. v. Pioneer Aviation LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 & n.8 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) (10% fee reduction where "attorneys' billing entries are overly vague or duplicative." (citing cases)); Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 04 Civ. 3854, 2008 WL 4833025 at *7 (S.D.N.Y. May 3, 2008) (Peck, M.J.) (5% across-the-board fee reduction) (citing cases)); Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., 04 Civ. 2666, 2008 WL 4925020 at *2 (S.D.N.Y. Nov. 10, 2008) (Daniels, D.J. & Peck, M.J.) (5% fee reduction "to take into account attorney hours billed for the performance of paralegal-type work, as well as duplicative charges.").

## III.   COSTS

A prevailing plaintiff under the FLSA and NYLL is entitled to reasonable costs as well as fees.  (See cases cited at page 7 above.)  Plaintiffs initially sought to recover $113,594.85 in costs (after voluntarily eliminating $3,645.63 in costs). (Dkt. No. 153: Lora Fee Br. at 2; Dkt. No. 151: Longobardi Aff. ¶ 237.)  Defendants argued that ADK is not entitled to recover any costs because they did "not submit[] any invoices or documentation supporting the cost application, thus precluding Defendants any opportunity to review and assess the invoices for accuracy and reasonableness." (Dkt. No. 156: J.V. Car Wash Fee Br. at 21.)  Defendants further specifically object to the costs incurred by ADK in hiring Dr. Stuart Kleinman to perform an IME of Vazquez, the amounts paid by ADK for translation services, travel expenses related to ADK's involvement in the bankruptcy proceedings, and FedEx costs. (J.V. Car Wash Fee Br. at 23-24.)  In response to

defendants' objections, plaintiffs further voluntarily reduced the costs sought by $1,544.49 to $112,050.36 and submitted a detailed revised statement of their costs and supporting invoices. (Dkt. No. 162: Lora Reply Fee Br. at 20; see generally Dkt. No. 159: Longobardi Reply Aff. Ex. G: Invoices.)

Contrary to defendants' claim, ADK's costs clearly were itemized in the billing entries that ADK initially submitted in support of their motion. (See generally Dkt. No. 151: Longobardi Aff. Exs. A & B.) In any event, plaintiffs have since submitted a reduced costs statement including detailed supporting invoices. (Longobardi Reply Aff. ¶ 42 & Ex. G: Invoices.) This is sufficient to support plaintiffs' request for costs. See, e.g., Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2012 WL 3878144 at *5 (S.D.N.Y. Aug. 6, 2012) ("Defendants contend that Plaintiffs failed to provide invoices for their costs along with their moving papers . . . . Plaintiffs submitted detailed invoices with their reply papers, which are adequate to support their requested costs."), aff'd, 519 F. App'x 1, 6 (2d Cir. 2013) ("the district court did not abuse its discretion in concluding that the invoices submitted by plaintiffs were sufficient to support the requested expert witness costs").

Defendants challenge as unreasonable plaintiffs' request for over $41,400 in costs for Dr. Kleinman's independent medical examination of Vazquez. (J.V. Car Wash Fee Br. at 22-23.) Dr. Kleinman examined Vazquez for six and a half hours over the course of three days and reviewed 1,200 pages of medical records, along with a 23-page memorandum "concerning the standard for the legal determination of mental competency in civil actions in the Second Circuit" prepared by Longobardi, and "background information concerning the FLSA Action and the bankruptcy proceedings, and all statements and testimony by Mr. Vazquez" prior to writing his thirty-nine page expert report. (Longobardi Aff. ¶¶ 152-53, 157; Longobardi Reply Aff. ¶ 45; see page 5 above.) Defendants do not contest these facts. (See J.V. Car Wash Fee Br at 21-24.)

Plaintiffs have submitted Dr. Kleinman's invoices, showing the hours he worked and

that he charged $750 per hour. (See Longobardi Reply Aff. Ex. G: Kleinman Invoices.)  Although

$750 is high, the Court accepts plaintiffs' explanation that "given Mr. Vazquez's history in this

FLSA action, [they] sought to retain an expert psychiatrist whose opinion would be unassailable

both in terms of accuracy and impartiality" based on Dr. Kleinman's "reputation as a pre-eminent

forensic psychiatrist in the area of determining 'competency' in both civil and criminal cases."

(Longobard Reply Aff. ¶ 45; see also Longobardi Reply Aff. Ex. G: Statement of Dr. Kleinman's

Qualifications in Forensic Psychiatry.)  Moreover, defendants' then-counsel consented to Dr.

Kleinman's selection (Longobardi Reply Aff. ¶ 44; see also Dkt. No. 102: 4/3/14 Hearing Tr. at 15-

17), and their current special litigation counsel represented to plaintiffs' counsel "that her firm had

'worked with [Dr. Kleinman]' on prior occasions" (Longobardi Reply Aff. ¶ 46).  Defendants cannot

claim to have been surprised either by plaintiffs' choice of psychiatric expert or by his rates.

(Longobardi Reply Aff. ¶ 46.)  In the "typical" FLSA case, the defendant does not feign mental

illness to try to stall the case, as Vazquez did here.  The Court finds that the $41,400 sought by

plaintiffs for Dr. Kleinman is reasonable under the circumstances.

Defendants further argue that "over $11,000 for private investigators . . . is excessive

and unreasonable." (J.V. Car Wash Fee Br. at 23.)  Plaintiffs' invoices, however, show that the costs

were for process servers as well as private investigators.  (See Longobardi Reply Aff. Ex. G.)

Plaintiffs' explanation for why they needed to incur private investigator costs is credible.  (See Dkt.

No. 159: Longobardi Reply Aff. ¶¶ 48-50.)  It was appropriate to incur costs to conduct background

checks on the defendants (see, e.g., Longobardi Reply Aff. Ex. G: 9/11/12 Invoice ("Background

check on Saturnino Vargas"), and perform asset searches to assess the seriousness of defendants'

bankruptcy threats (Longobardi Reply Aff. ¶ 48; Longobardi Reply Aff. Ex. G: 3/1/13 Invoice

("Payment to Private Investigator re Advanced Asset Search on Defendants")).   So too were

plaintiffs' efforts to locate and serve a deposition notice on Milagros DeJesus, who was identified

as responsible for compiling employees' payroll information and records on a weekly basis.

(Longobardi Reply Aff. ¶ 49; Longobardi Reply Aff. Ex. G: 5/13/14 Invoice ("Fee for locating and

serving subpoena on Millie de Jesus")).   Finally, the Court's review of the relevant invoices reveals

no obviously duplicative or inappropriate entries.   (See generally Longobardi Reply Aff. Ex. G.)

        Similarly, defendants' objections to plaintiffs' FedEx costs and travel expenses are

meritless. (J.V. Car Wash Br. at 23-24.)   Defendants object to plaintiffs' FedEx costs for sending

documents to the "'Honorable Cyrus Vance, Jr., Honorable Preet Bharara' and 'Detective John

McSherry'" because allegedly there is "no explanation as to why ADK sent the documents in the first

place."   (J.V. Car Wash Fee Br. at 23.)   The Court finds plaintiffs' explanation of these costs

credible:

> 52.   In April 2013, [former defense counsel] wrote to the Court
> concerning allegations of "witness tampering" based on a purported attack
> against Mr. Vasquez by one of his former employees, who was not a
> Plaintiff.   At a conference on May 3, 2013, the Court declined to refer
> [former defense counsel's] allegations of "witness tampering" to the United
> States attorney. [Prior defense counsel] then sent a letter to the Honorable
> Preet Bharara, the Honorable Cyrus R. Vance, Jr., and Detective Cyrus
> McSherry, on May 28, 2013. In his letter, [former defense counsel] repeated
> his allegations that the Plaintiffs were involved in the purported attack
> against Mr. Vazquez, and requested that law enforcement commence an
> investigation into his claims.
>
> 53.   [Plaintiffs' counsel] did not receive a copy of [former defense
> counsel's] letter to the law enforcement agencies until May 31, 2013; it was
> not clear to [plaintiffs' counsel] at the time as to whether they had already
> received it. Accordingly, [plaintiffs' counsel] sent [her] reply to these
> agencies by FedEx, as [she] believed it to be necessary.

(Longobardi Reply Aff. ¶¶ 52-53, record citation omitted; see also Dkt. No. 151: Longobardi Aff.

34

¶¶ 67, 70.)[27/]   Similarly, since the Court has found counsel's involvement in the bankruptcy proceedings to have been reasonable and appropriate (see pages 26-27 above), it is reasonable to award the costs incurred for travel to attend the New Jersey bankruptcy proceedings (see Longobardi Reply Aff. ¶¶ 55-56). Finally, the hourly amounts that ADK paid for translators -- $33.78 per hour for Ms. Perez and $15 per hour for Mr. Araujo -- are reasonable. (Longobardi Aff. ¶ 51; Dkt. No. 161: Perez Aff ¶ 3; Dkt. No. 163: Araujo Aff. ¶ 2.)  See also, e.g., Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *8 (S.D.N.Y. June 19, 2015) (an hourly rate of $75 was reasonable for paralegal work that included acting as a Spanish interpreter for communications between plaintiff and his attorneys); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *6-7 (S.D.N.Y. Aug. 8, 2014) (awarding an hourly rate of $125 for Spanish-language translations of discovery requests and briefs); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 515 (S.D.N.Y. Mar. 15, 2011) (Peck, M.J.) ("The $50 hourly rate for a Spanish interpreter for the settlement conference also appears reasonable.").

Accordingly, plaintiffs' request for costs should not be reduced further, and they should be awarded the requested $112,050.36.

## CONCLUSION

For the reasons set forth above, the Court should GRANT plaintiffs' motion for attorneys' fees and costs (Dkt. No. 142) to the extent of awarding plaintiffs attorneys' fees of $1,214,448.06 and costs of $112,050.36.

---

[27/]   See also, e.g., Longobardi Aff. Ex. A: Billing Records: 4/18/13 (receipt of letter by former defense counsel to Judge Stanton alleging witness tampering); 5/2/13 (10 min for "review of Defendants' letter to the Court re stay of litigation and referral of case to the U.S. Attorney for investigation into witness tampering"); 5/31/13 (meetings to discuss possible responses to "letter from [former defense counsel] to prosecutors re alleged witness tampering" and prep of materials to send to defense counsel, "USAO, NYCA and NYPD").

35

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Louis L. Stanton, 500 Pearl Street, Room 2250, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Stanton (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:          New York, New York
                July 24, 2015


                              Respectfully submitted,


                              Andrew J. Peck
                              United States Magistrate Judge


Copies ECF to:  All Counsel
                Judge Louis L. Stanton